IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CHARLES REYNOLDS, as PERSONAL
REPRESENTATIVE OF THE WRONGFUL
DEATH ESTATE OF DANNY WHITE, deceased,
and DEBBIE AND MANUEL MORALEZ, individually.

    Plaintiffs,

v.                                1:21-cv-01157-SMV-KK

ALBUQUERQUE POLICE DEPARTMENT,
CITY OF ALBUQUERQUE, OFFICER
JOSH JOHNSON, OFFICER MICHAEL
HARRISON, JOHN/JANE DOE SUPERVISOR,
And JOHN/JANE DOE DISPATCH OPERATOR,

    Defendants.

**DEFENDANTS CITY OF ALBUQUERQUE, THE ALBUQUERQUE POLICE DEPARTMENT BY AND THROUGH ITS OPERATOR THE CITY OF ALBUQUERQUE, OFFICER JOSH JOHNSON, AND OFFICER MICHAEL HARRISON'S ANSWER TO PLAINTIFFS' "COMPLAINT FOR WRONGFUL DEATH, DEPRIVATION OF CIVIL RIGHTS, AND VIOLATION OF THE AMERICANS WITH DISABILITIES ACT"**

**COME NOW,** Defendants City of Albuquerque, the Albuquerque Police Department by and through its operator, the City of Albuquerque, Officer Josh Johnson, and Officer Michael Harrison (hereinafter "Defendants"), by and through their attorney, Deputy City Attorney Stephanie M. Griffin and state the following for Defendants' Answer to Plaintiffs' "Complaint for Wrongful Death Deprivation of Civil Rights, and Violation of the Americans with Disabilities Act." (hereinafter "Complaint")

**JURISDICTION, PARTIES, AND VENUE**

1.     In response to Paragraph 1 of the Complaint, Defendants admit that venue and jurisdiction are proper within the United States District Court of New Mexico.

2.     Defendants admit the allegations contained in Paragraphs 2, 3, 4, and 5 of the

Complaint.

3. In response to Paragraph 6 of the Complaint, Defendants admit that the Albuquerque Police Department is an administrative agency operated by the City of Albuquerque. Defendants deny the remaining allegations contained in Paragraph 6.

4. Defendants lack sufficient knowledge or information as to the veracity of the allegations contained in Paragraphs 7 and 8 of the Complaint and therefore deny the same.

5. Defendants admit the allegations contained in Paragraph 9 of the Complaint.

6. In response to Paragraph 10 of the Complaint, Defendants admit that a Tort Claim Notice dated May 3, 2021 was submitted by Plaintiff Debbie Morales on behalf of the Wrongful Death Estate of Danny White against the Albuquerque Police Department. Defendants deny the remaining allegations contained in Paragraph 10.

## PLAINTIFFS' "FACTS COMMON TO ALL COUNTS"

7. Defendants deny the allegations contained in the first subheading of this section and Paragraphs 11, 12, 13, 14, and 15 of the Complaint.

8. In response to Paragraphs 16, 17, 18, 19, 19a., 19b., second number 19, and second number 19a, of the Complaint, Defendants admit that the City of Albuquerque and the United States Government entered into a settlement agreement on in *United States of America v. City of Albuquerque*, 14-cv-01025 JB-SMV and Defendants admit that the full terms and conditions of that settlement agreement are outlined in Document 9-1 filed on November 14, 2014 in this cause number. Defendants deny the remaining allegations contained in Paragraphs 16, 17, 18, 19, 19a., 19b., second number 19, and second number 19a, .

9. Defendants deny the allegations contained in the second subheading of this section and Paragraphs 20, 21, 22, 23, 24, 25, and 26 of the Complaint.

10. In response to Paragraph 27 of the Complaint, Defendants admit that the City of Albuquerque and the United States Government entered into a settlement agreement on in *United States of America v. City of Albuquerque*, 14-cv-01025 JB-SMV and Defendants admit that the full terms and conditions of that settlement agreement are outlined in Document 9-1 filed on November 14, 2014 in this cause number. Defendants deny the remaining allegations contained in Paragraph 27.

11. Defendants admit the allegations contained in Paragraph 28 of the Complaint.

12. Defendants deny the allegations contained in Paragraphs 29 and 30 of the Complaint.

13. In response to Paragraph 31 of the Complaint, Defendants admit that Albuquerque Police Department Standard Operating Procedure No. 2-19 with an effective date of April 2, 2021 (hereinafter "SOP 2-19") was in effect on April 4, 2021. Defendants deny the remaining allegations contained in Paragraph 31.

14. Defendants deny the allegations contained in Paragraph 32 of the Complaint.

15. In response to Paragraph 32a of the Complaint, Defendants admit that Section 2-19-4(D) of SOP 2-19 states:

> An ECC employee shall apply their training and experience to identify calls that indicate the individual may be affected by a behavioral health disorder or a behavioral health crisis, and, if so, shall dispatch an ECIT officer or MCT, when appropriate and available.

Defendants deny the remaining allegations contained in Paragraph 32a.

16. In response to Paragraph 32b of the Complaint, Defendants admit that Section 2-19-4(B) of SOP 2-19 states:

> Only a trained mental health professional can diagnose behavioral health issues, psychiatric disorders, or illness. Department personnel, sworn personnel, and Emergency Communications Center (ECC) personnel

cannot and shall not diagnose an individual's mental health condition. However, they must apply their training to recognize behaviors and signs that indicate the individual may be affected by a behavioral health disorder or is in a behavioral health crisis and adapt police responses accordingly.

Defendants deny the remaining allegations contained in Paragraph 32b.

17. In response to Paragraph 32c of the Complaint, Defendants admit that Section 2-19-6(B) of SOP 2-19 states:

> When feasible, sworn personnel shall attempt to de-escalate and calm the situation until a supervisor, an ECIT officer, a CIU detective, or MCT arrives to control the scene and direct operations.

Defendants deny the remaining allegations contained in Paragraph 32c.

18. In response to Paragraph 32d of the Complaint, Defendants admit that Section 2-19-6(C)(1) of SOP 2-19 states:

> When on scene, ECIT sworn personnel, MCT, or CIU detectives shall take the lead in interacting with individuals in a behavioral health crisis. If a supervisor has assumed responsibility for the scene, the supervisor shall seek input from ECIT, MCT or CIU on strategies for de-escalating, calming and resolving the crisis, when the situation allows such consultation safely. Supervisors are encouraged to become ECIT trained in order to better evaluate the ECIT sworn personnel they oversee or assist in situations where an ECIT officer is unavailable.

Defendants deny the remaining allegations contained in Paragraph 32d.

19. In response to Paragraph 32e of the Complaint, Defendants admit that Section 2-19-6(C)(2) of SOP 2-19 states:

> When feasible, the responding officer shall request a backup officer whenever the individual shall be taken into custody (either for booking or for an emergency mental health evaluation). When making the request, the officer should specify an ECIT officer as a backup, unless the requesting officer is an ECIT officer.

Defendants deny the remaining allegations contained in Paragraph 32e.

20. In response to Paragraph 32f of the Complaint, Defendants admit that Section 2-19-6(C)(6) of SOP 2-19 states:

> When feasible, sworn personnel should gather information from acquaintances, family members, or in emergency situations, the individual's behavioral health provider, if known. Sworn personnel should attempt to understand the nature of the crisis the individual is experiencing and try to learn what has helped de-escalate the individual in similar situations in the past. Request the assistance of the MCT, if available to assist, when ECIT sworn personnel are unable to make progress in de-escalating the situation and the scene is safe for a clinician to engage with the individual.

Defendants deny the remaining allegations contained in Paragraph 32f.

21. Defendants deny the allegations contained in Paragraphs 33 and 34 of the Complaint.

22. In response to Paragraph 35 of the Complaint, Defendants admit that Section 2-52-6(A)(5) of Albuquerque Police Department Standard Operating Procedure No. 2-52 with an effective date of January 11, 2020 states:

> In situations when the individual is forced into a face down position, officers shall release pressure/weight from the individual and position the individual on their side or sit them up as soon as they are restrained and it is safe to do so. Officers shall monitor the individual for any breathing problems or any other signs of distress.

Defendants deny the remaining allegations contained in Paragraph 35.

23. Defendants deny the allegations contained in Paragraph 36 of the Complaint.

24. Defendants deny the allegations contained in the third subheading of this section and Paragraph 37 of the Complaint.

25. In response to Paragraphs 38 and 39 of the Complaint, Defendants admit that on April 4, 2021, Marlena Daniels called 911 at approximately 1:15 p.m. and informed the 911 Operator:

> So I have my brother here, my older brother. He has Huntington's
> disease, and he's just having a really -- a – an outburst. And he just beat
> my dad up, and he's in the house. And I have my grandma and my mom
> in there, and I'm just -- he's going to end up hurting somebody.

Defendants deny the remaining allegations contained in Paragraphs 38 and 39.

26. In response to Paragraph 40 of the Complaint, Defendants admit that Danny White's family members reported to Albuquerque Police Department officers on November 7, 2019 and on April 4, 2021, and to Albuquerque Police Department Crisis Intervention Unit detectives on November 8, 2019 that Danny White was diagnosed with Huntington's disease. Defendants lack sufficient knowledge or information as to the veracity of the remaining allegations in Paragraph 40 of the Complaint and therefore deny the same.

27. In response to Paragraph 41 of the Complaint, Defendants admit that Danny White's family members reported to Albuquerque Police Department officers on November 7, 2019 and on April 4, 2021, and to Albuquerque Police Department Crisis Intervention Unit detectives on November 8, 2019 that Danny White was diagnosed with Huntington's disease. Defendants deny the remaining allegations in Paragraph 41 of the Complaint.

28. In response to Paragraph 42 of the Complaint, Defendants admit Marlena Daniels told the operator that Danny White had "beat up" her father; that Danny White was diagnosed with Huntington's disease which is a mental condition that causes outbursts; that Danny White is a big, strong guy; and that someone needs to come out "because he's going to hurt somebody." Defendants admit that after Marlena Daniels provided this information to the 911 Operator, the operator said that she was definitely going to get some help out to her. Defendants deny the remaining allegations contained in Paragraph 42.

29. Defendants admit the allegations contained in Paragraph 43 of the Complaint.

30. In response to Paragraph 44 of the Complaint, Defendants admit that Ms. Daniels informed the 911 Operator that Danny White did not have weapons or access to weapons. Defendants deny the remaining allegations contained in Paragraph 44.

31. In response to Paragraph 45 of the Complaint, Defendants admit that Ms. Daniels asked if the "crisis team" or "Officer Padilla" could be sent out. Defendants deny the remaining allegations contained in Paragraph 45.

32. In response to Paragraph 46 of the Complaint, Defendants admit that the 911 Operator told Ms. Daniels that she would definitely request Officer Padilla but that she was not sure if he was working or if the Crisis Team was available. Defendants deny the remaining allegations contained in Paragraph 46.

33. In response to Paragraph 47 of the Complaint, Defendants admit that the 911 Operator said to Ms. Daniels during the course of the 911 call: "Hopefully we'll get him the help that he needs….Yeah, if the officers do determine that he's like a danger to himself or others, they might be able to transport him to UNMH to be evaluated." Defendants deny the remaining allegations contained in Paragraph 47.

34. In response to Paragraph 48 of the Complaint, Defendants admit that the 911 Operator told Ms. Daniels to hang up after Ms. Daniels informed her that two officers had arrived and were standing next to her. Defendants deny the remaining allegations contained in Paragraph 48.

35. Defendants admit the allegations contained in Paragraph 49 of the Complaint.

36. Defendants lack sufficient knowledge or information as to the veracity of the allegations contained in Paragraph 50 of the Complaint and therefore deny the same.

37. Defendants deny the allegations contained in Paragraphs 51, 52, 53, and 54 of the Complaint.

38. In response to the allegations contained in Paragraphs 55, 56, 57, and 58 of the Complaint, Defendants admit that Manuel Moralez, Jr. said to Officer Johnson and Officer Harrison:

> So that's the only reason I'm -- I wanted to talk to you guys real quick, is just to get that out right away. He has Huntington's. It comes with a lot of baggage. He is hyper-aggressive. Yeah, so it's a disorder in your -- it messes with your nerves …. He's going to be aggressive. That's why I'm trying to -- if I can help…or talk, I would prefer to at least try.

Defendants admit that Debbie Moralez told the officers that Danny White has to be taken to the UNM psychiatric hospital but she also said that he will not want to go. Defendants admit that Manuel Moralez, Sr. told Officer Johnson that he had a bump on his head from Danny White hitting him with a closed fist about three times. Defendants admit that Manuel Moralez, Sr. told Officer Johnson that this was not the first occasion that Danny White had attacked him. Defendants admit that Manuel Moralez, Sr. told Officer Johnson that it's the fifth time that he had been attacked by Danny White. Defendants admit that Manuel Moralez, Sr. told Officer Johnson: "I am going to file charges. I'm not -- I'm not going to put up with this." Defendants admit that Officer Johnson asked Manuel Moralez, Sr. if he wanted Danny White evicted, and Mr. Moralez responded:

> Yeah, I don't -- I don't want to -- that's -- that's his mom. It's up to her, but I don't want to have anything to do with him anymore. I'm done.

Defendants admit that both Debbie Moralez and Manuel Moralez, Sr. said that Danny White had threatened to kill Manuel Moralez, Sr. on the date of the subject incident. Defendants deny the remaining allegations contained in Paragraphs 55, 56, 57, and 58.

39. Defendants deny the allegations contained in Paragraph 59 and 60 of the Complaint.

40. In response to Paragraphs 61 and 62 of the Complaint, Defendants admit that Officer Johnson had no prior training or knowledge of Huntington's disease. Defendants admit that after Manuel Moralez, Sr. told Officer Johnson that he wanted Danny White evicted but that its up to his mom, Officer Johnson asked Debbie Moralez if she wanted Danny White evicted or if she wanted a restraining order. Defendants admit that Debbie Moralez responded: "What am I going to do with him? He doesn't have nowhere to go… If he doesn't go to the hospital." Defendants admit that Officer Johnson then said in response: "The hospital, no matter what it is, is going to be a temporary solution." Defendants admit that Debbie Moralez then told Officer Johnson about Danny White's past suicide attempt and threat to kill Manuel Moraez, Sr. Defendants admit that Officer Johnson told Debbie Moralez:

> All right. Well, I think – I think I -- just from talking to you, I think I – I think I have enough information. We'll go over there and talk to him and see if we can't take him to UNM.

Defendants deny the remaining allegations contained in Paragraphs 61 and 62.

41. Defendants deny the allegations contained in Paragraphs 63, 64, and 65 of the Complaint.

42. In response to Paragraph 66 of the Complaint, Defendants admit that after Debbie Moralez led the officers to Danny White's bedroom and unlocked and opened the door to this room, Officer Johnson introduced himself and asked Danny White how he was doing. Defendants admit that Danny White responded by telling Officer Johnson that he was good. Defendants admit that Officer Johnson then asked Danny White if he and Officer Harrison could come in and talk with him, and Danny White told him "No."

43. Defendants deny the allegations contained in Paragraphs 67, 68, 69. 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, and 80 of the Complaint.

44. In response to Paragraph 81 of the Complaint, Defendants admit that Officer Johnson was asked over APD radio communications if the individual was just verbally threatening or if he presented a threat towards officers or anybody else in the house. Defendants admit that Officer Johnson said the following in response:

> Yes, towards other individuals in the house. He is very animated with his fists, extreme bouts of rage sudden. He's staying seated, but he -- if he stands up, it's going to be a fight.

Defendants deny the remaining allegations contained in Paragraph 81.

45. In response to Paragraph 82 of the Complaint, Defendants admit that these allegations do not set forth the entire events that transpired in real time and they are therefore denied.

46. In response to Paragraph 83 of the Complaint, Defendants admit that Officer Harrison pointed his Taser weapon at Danny White's lower extremities as Danny White advanced towards him in a threatening manner.

47. Defendants deny the allegations contained in Paragraph 84 of the Complaint.

48. In response to Paragraphs 85 and 86 of the Complaint, Defendants admit that these allegations do not set forth the entire events that transpired in real time and they are therefore denied.

49. Defendants deny the allegations contained in Paragraphs 87, 88, 89, 90, and 91 of the Complaint.

50. In response to Paragraph 92 of the Complaint, Defendants admit that the Officer of the Medical Investigator issued an autopsy report. Defendants deny the remaining allegations contained in Paragraphs 92.

51. In response to Paragraphs 92a, 92b, 92c, 92d, 92e, and 93 of the Complaint, Defendants admit that these allegations do not set forth the entire autopsy summary and findings and they are therefore denied.

52. Defendants admit the allegations contained in Paragraph 94 of the Complaint.

53. Defendants deny the allegations contained in Paragraphs 95, 96, 97, 98, 98a, 98b, 98c, 98d, 99, 100, the fifth subheading of this section, and Paragraph 101 of the Complaint.

54. In response to Paragraphs 102, 103, and 104 of the Complaint, Defendants admit that on February 5, 2021, a "Joint Motion for entry of Stipulated Order Establishing an External Force Investigation Team" and a proposed Stipulated Order to this effect was filed in *United States of America v. City of Albuquerque*, 14-cv-01025 JB-SMV and Defendants admit that the full terms and conditions of the motion and order are set forth in these documents. Defendants deny the remaining allegations contained in Paragraphs 102, 103, and 104.

55. In response to Paragraphs 105, 106, 107, 108 of the Complaint, Defendants admit a Court appointed monitor has published reports concerning the Albuquerque Police Department. Defendants deny the remaining allegations contained in Paragraphs 105, 106, 107, and 108.

56. Defendants deny the allegations contained in Paragraphs 109 and 110 of the Complaint.

## PLAINTIFFS' COUNT I – "*MONELL* CLAIM"

57. Defendants admit the allegations contained in Paragraph 111 of the Complaint.

58. Defendants deny the allegations contained in Paragraphs 112, 113, 114, 115, 116,

117, 118, and 119 of the Complaint.

### PLAINTIFFS' COUNT II – "AGAINST OFFICERS JOHNSON AND HARRISION: FOURTH AMENDMENT VIOLATION-UNREASONABLE SEIZURE OF DANNY WHITE"

59. In response to Paragraph 120 of the Complaint, Defendants admit and deny the allegations contained in Paragraphs 1 through 119 of the Complaint as set forth in Paragraphs 1 through 58 of this Answer.

60. Defendants admit the allegations contained in Paragraph 121 of the Complaint.

61. Defendants deny the allegations contained in Paragraphs 122, 123, 124, 125, 126, 127, and 128 of the Complaint.

### PLAINTIFFS' COUNT III – "AGAINST OFFICERS JOHNSON AND HARRISION: FOURTH AMENDMENT VIOLATION-EXCESSIVE AND UNNECESSARY USE OF FORCE"

62. In response to Paragraph 129 of the Complaint, Defendants admit and deny the allegations contained in Paragraphs 1 through 128 of the Complaint as set forth in Paragraphs 1 through 61 of this Answer.

63. Defendants admit the allegations contained in Paragraph 130 of the Complaint.

64. Defendants deny the allegations contained in Paragraphs 131, 132, 133, 134, 135, and 136 of the Complaint.

### PLAINTIFFS' COUNT IV – "STATE TORT CLAIMS AGAINST OFFICERS JOHNSON AND HARRISON FOR ASSAULT, BATTERY, FALSE ARREST, AND FALSE IMPRISONMENT"

65. In response to Paragraph 137 of the Complaint, Defendants admit and deny the allegations contained in Paragraphs 1 through 136 of the Complaint as set forth in Paragraphs 1 through 64 of this Answer.

66. In response to Paragraph 138 of the Complaint, Defendants admit a Tort Claim

Notice dated May 3, 2021 was submitted by Plaintiff Debbie Morales on behalf of the Wrongful Death Estate of Danny White against the Albuquerque Police Department. Defendants deny the remaining allegations contained in Paragraph 138.

67. Defendants deny the allegations contained in Paragraph 139 of the Complaint.

68. In response to Paragraph 140 of the Complaint, Defendants admit that Officer Josh Johnson and Officer Michael Harrison were acting in the course and scope of their employment on the date that they encountered Danny White. Defendants deny the remaining allegations contained in Paragraph 140.

69. Defendants deny the allegations contained in Paragraphs 141 and 142 of the Complaint.

70. In response to Paragraph 143 of the Complaint, Defendants deny that excessive and unnecessary force was used against Danny White and Defendants deny the remaining allegations contained in Paragraph 143.

71. Defendants deny the allegations contained in Paragraphs 144 and 145 of the Complaint.

**PLAINTIFFS' COUNT V – "NEGLIGENT HIRING, TRAINING, SUPERVISION AND RETENTION"**

72. In response to Paragraph 146 of the Complaint, Defendants admit and deny the allegations contained in Paragraphs 1 through 145 of the Complaint as set forth in Paragraphs 1 through 71 of this Answer.

73. Defendants deny the allegations contained in Paragraph 147 of the Complaint.

74. In response to Paragraphs 148 148a, 148b, 148c, 148d, 148e, 148f, 148g, 148h, 149 of the Complaint, Defendants deny they are negligent and Defendants deny Paragraphs 148, 148a, 148b, 148c, 148d, 148e, 148f, 148g, and 148h, and 149.

## PLAINTIFFS' COUNSE VI – "VIOLATON FO THE AMERICANS WITH DISABILITIES ACT"

75. In response to Paragraph 150 of the Complaint, Defendants admit and deny the allegations contained in Paragraphs 1 through 149 of the Complaint as set forth in Paragraphs 1 through 74 of this Answer.

76. In response to Paragraph 151 of the Complaint, Defendants admit that the Albuquerque Police Department as an administrative agency of the City of Albuquerque could be defined as a "public entity" under Subchapter II – Public Services of the Americans with Disabilities Act ("ADA"). Defendants deny the remaining allegations contained in Paragraph 151.

77. Defendants deny the allegations contained in Paragraphs 152 and 153 of the Complaint.

78. In response to Paragraphs 154, 154a, 154b, and 155 of the Complaint, Defendants admit that the Department of Justice has published 28 C.F.R Part 35 – Nondiscrimination on the Basis of Disability in State and Local Government Services, that includes and is not limited to 28 C.F.R. §§ 35.104; 35.105(a)-(b); 35.139(a); and 35.151. Defendants deny the remaining allegations contained in Paragraphs 154, 154a, 154b, and 155.

79. Defendants deny the allegations contained in Paragraphs 156, 157, 158, 158a, 158b, 158c, 158d, 159, and 160 of the Complaint.

80. In response to Paragraph 161 of the Complaint, Defendants deny that Albuquerque Police Department officers repeatedly use unreasonable force against individuals with mental disabilities. Defendants also deny the remaining allegations contained in Paragraph 161.

81. Defendants deny the allegations contained in Paragraph 162 of the Complaint.

82. In response to Paragraph 163 of the Complaint, Defendants deny that "Defendant APD and the City" decided to discriminate, and deny that Danny White was discriminated against. Defendants also deny the remaining allegations contained in Paragraph 163.

83. In response to Paragraph 164 of the Complaint, Defendants deny that "Defendant APD and the City" have discriminatory practices. Defendants also deny the remaining allegations contained in Paragraph 164.

84. Defendants deny the allegations contained in Paragraph 165 of the Complaint.

**PLAINTIFFS COUNT VII – "LOSS OF CONSORTIUM BY DEBBIE MORALEZ"**

85. In response to Paragraph 166 of the Complaint, Defendants admit and deny the allegations contained in Paragraphs 1 through 165 of the Complaint as set forth in Paragraphs 1 through 84 of this Answer.

86. Defendants deny the allegations contained in Paragraph 167 of the Complaint.

87. In response to Paragraph 168 of the Complaint, Defendants admit that Danny White was 43 years old at the time of his death. Defendants lack sufficient knowledge or information as to the veracity of the remaining allegations contained in Paragraph 168 of the Complaint and therefore deny the same.

88. Defendants lack sufficient knowledge or information as to the veracity of the allegations contained in Paragraphs 169, 170, and 171 of the Complaint and therefore deny the same.

89. Defendants deny the allegations contained in Paragraphs 172, 173, and 174 of the Complaint.

**PLAINTIFFS' COUNT IX – "LOSS OF CONSORTIUM BY MANUEL MORALEZ"**

90. In response to Paragraph 175 of the Complaint, Defendants admit and deny the

allegations contained in Paragraphs 1 through 174 of the Complaint as set forth in Paragraphs 1 through 89 of this Answer.

91. Defendants deny the allegations contained in Paragraph 176 of the Complaint.

92. In response to Paragraph 177 of the Complaint, Defendants admit that Danny White was 43 years old at the time of his death. Defendants lack sufficient knowledge or information as to the veracity of the remaining allegations contained in Paragraph 177 of the Complaint and therefore deny the same.

93. Defendants lack sufficient knowledge or information as to the veracity of the allegations contained in Paragraphs 178, 179, 180 of the Complaint and therefore deny the same.

94. Defendants deny the allegations contained in Paragraphs 181, 182, and 183 of the Complaint.

### PLAINTIFFS' COUNT X – "PUNITIVE DAMAGES"

95. In response to Paragraph 184 of the Complaint, Defendants admit and deny the allegations contained in Paragraphs 1 through 183 of the Complaint as set forth in Paragraphs 1 through 94 of this Answer.

96. Defendants deny the allegations contained in Paragraphs 185, 186, 187, 188, 189, 190, and 191 of the Complaint.

### PLAINTIFFS' "PRAYER FOR RELIEF"

94. Defendants deny that Plaintiffs are entitled to the relief requested in the Prayer for Relief clause, including subsections a, b, c, d, and e of this section.

### GENERAL DENIAL

95. Any allegations not specifically admitted in this Answer is hereby denied.

## AFFIRMATIVE DEFENSES

1. The Complaint contains one or more claims for which relief cannot be granted.

2. Plaintiffs have not asserted one or more plausible claims of relief.

3. Officer Johnson's actions were objectively reasonable under the totality of circumstances, done in good faith, and therefore, he is entitled to qualified immunity and immunity under the New Mexico Tort Claims Act.

4. Officer Harrison's actions were objectively reasonable under the totality of circumstances, done in good faith, and therefore, he is entitled to qualified immunity and immunity under the New Mexico Tort Claims Act.

5. There was reasonable suspicion and/or probable cause to seize Danny White.

6. Officer Johnson used a reasonable amount of force under the totality of the circumstances.

7. Officer Harrison used a reasonable amount of force under the totality of the circumstances.

8. Officer Johnson did not commit a clearly established constitutional violation.

9. Officer Harrison did not commit a clearly established constitutional violation.

10. Because the officers were acting under exigent circumstances, the duty to accommodate an individual under the Americans with Disabilities Act was not invoked or applicable.

11. Defendants did not violate the Americans with Disabilities Act because decedent's activity was unlawful and because the officers' use of force was used in self-defense and/or in defense of others.

12. Defendants did not violate the Americans with Disabilities Act because Title II "does not require a public entity to permit an individual to participate in or benefit from the services, programs, or activities of that public entity when that individual poses a direct threat to the health or safety of others." 28 CFR § 35.139(a)

13. Defendant City of Albuquerque and/or its agency the Albuquerque Police Department cannot be held liable because there was no constitutional violation or violation of the Americans with Disabilities Act committed by one of its officers and because there was no alleged unconstitutional policy or custom which was the moving force behind any alleged constitutional violation.

14. The City of Albuquerque and/or its agency the Albuquerque Police Department is not liable under the Americans with Disabilities Act because it did not know that a modification to services under the Act was necessary as the City of Albuquerque and/or its agency the Albuquerque Police Department was not aware of the specific nature of any disability of decedent as defined under the Americans with Disabilities Act and therefore did not know that he required any modification of services because of any such disability.

15. Defendants did not act with deliberate indifference towards decedent.

16. Defendants' conduct did not cause a violation under the Americans with Disabilities Act.

17. Plaintiffs' state law claims are barred in whole or in part by the provisions set forth in the New Mexico Tort Claims Act.

18. Defendant City of Albuquerque's and/or its agency the Albuquerque Police Department's immunity has not been waived under the New Mexico Tort Claims Act.

19. Plaintiffs' injuries or losses were proximately caused by the negligence, intentional misconduct or other fault of the decedent Vincent Wood and/or third person for whom Defendants are not liable.

20. Plaintiffs failed to mitigate damages.

21. Plaintiffs cannot recover punitive damages or attorney's fees as a matter of law for their state law claims against Defendants.

22. Plaintiffs cannot recover punitive damages against Defendant City of Albuquerque and/or its agency the Albuquerque Police Department.

23. The Albuquerque Police Department is not a suable entity under 42 U.S.C. § 1983, because it lacks legal identity apart from its operating municipality, the City of Albuquerque.

## **JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38, Defendants hereby demand a trial by jury on all claims and issues raised in the Complaint filed in this cause.

> Respectfully submitted,
>
> CITY OF ALBUQUERQUE
> OFFICE OF THE CITY ATTORNEY
>
> /s/ *Stephanie M. Griffin, Deputy City Attorney*
> P.O. Box 2248
> Albuquerque, New Mexico 87102
> (505) 768-4500
> sgriffin@cabq.gov
>
> *Attorney for Defendants City of Albuquerque, The Albuquerque Police Department by and through its operator the City of Albuquerque, Officer Josh Johnson, and Officer Michael Harrison*

It is hereby certified that a true copy
of the foregoing pleading was served via NEF to:

Frances C. Carpenter
Law Office of Frances Crockett
925 Luna Circle NW
Albuquerque, NM 87102
Office: 505.314.8884; Fax: 505.835-5658
frances@francescrockettlaw.com

Dusti Harvey
Jennifer J. Foote
Harvey & Foote Law Firm
9202 San Mateo Blvd. NE
Albuquerque, NM 87113
505-254-0000
Dusti@harveyfirm.com
Jennifer@harveyfirm.com

Allegra C. Carpenter
Allegra Carpenter Law Firm, LLC
500 Tijeras, NW
Albuquerque, NM 87102
505-340-6069
Allegra@AllegraCarpenter.com

*Attorneys for Plaintiffs*

on this 28th day of December, 2021

/s/ *Stephanie M. Griffin, Deputy City Attorney*