IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CHARLES REYNOLDS, as PERSONAL
REPRESENTATIVE OF THE WRONGFUL
DEATH ESTATE OF DANNY WHITE, deceased,
and DEBBIE AND MANUEL MORALEZ, individually,

      Plaintiffs,

v.                                                CV 21-1157 MV/KK

ALBUQUERQUE POLICE DEPARTMENT,
CITY OF ALBUQUERQUE, OFFICER
JOSH JOHNSON, OFFICER MICHAEL
HARRISON, JOHN/JANE DOE SUPERVISOR,
and JOHN/JANE DOE DISPATCH OPERATOR,

      Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendants' Opposed Motion to Stay, and Memorandum in Support ("Motion to Stay") [Doc. 11]. The Court, having considered the Motion, briefs, and relevant law, and being otherwise fully informed, finds that the Motion is well-taken and will be granted.

### BACKGROUND

Plaintiffs commenced the instant action on December 3, 2021, by filing their Complaint for Wrongful Death, Deprivation of Civil Rights, and Violation of the Americans with Disabilities Act [Doc. 1]. The Complaint arises out of a police encounter that ended in the tragic death of Danny White, who suffered from "a genetic disorder called Huntington's disease that "causes, among other things, occasional aggressiveness." *Id.* ¶ 40. The Complaint alleges that, in response to a 911 call made by a family member specifically requesting that dispatch

1

send a Crisis Intervention Team ("CIT") unit to help with an incident between Mr. White and his stepfather, Officers Josh Johnson and Michael Harrison – neither of whom were familiar with Mr. White or his condition, and were advised only of a "domestic violence" situation – arrived at Mr. White's home, where Mr. White was sitting along in his room, "threatening no one."  *Id.* ¶¶ 39, 53-54, 63, 65.   According to the Complaint, Officers Johnson and Harrison unnecessarily escalated their encounter with Mr. White as follows:  Officer Harrison pointed his taser at Mr. White; Officer Johnson "rushed him" and took him down to the ground; and Officer Harrison sat on Mr. White's legs while they placed him in handcuffs.  *Id.* ¶¶ 83-86.  "While on top of him, the officers held [Mr. White] down in this position for approximately three minutes, during which [Mr. White] visibly convulsed, clearly gasped for air, and asked the officers to 'stop.'" *Id.* ¶ 87.  As a result, Mr. White vomited, lost control of his bladder and then "became still." *Id.* ¶ 88.  Although the officers performed CPR, and Albuquerque Fire Department Rescue ("AFR") also arrived and performed CPR, Mr. White died.  *Id.* ¶¶ 89-91.  In an autopsy report, the Office of the Medical Investigator ("OMI") determined that the manner of death was "homicide."  *Id.* ¶ 94.

Based on this incident, the Complaint sets forth the following claims:  a § 1983 municipal liability claim against the City of Albuquerque (the "City") for its policies and customs, failure to supervise, and failure to train, all of which Plaintiffs claim resulted in Mr. White's death (Count I); § 1983 claims against Johnson and Harrison for violating Mr. White's Fourth Amendment rights to be free from unreasonable seizure and excessive force "when they tackled him, threw him down to the floor, and handcuffed his arms behind his back while holding a knee on his neck for three minutes, suffocating him," *Id.* ¶¶ 122, 133 (Counts II and III); a claim against Johnson and Harrison under the New Mexico Tort Claims Act for assault,

2

battery, false arrest, and false imprisonment (Count IV); a New Mexico statutory claim against the City and the Albuquerque Police Department ("APD") for negligent hiring, training, supervision, and retention, which Plaintiffs argue resulted in Mr. White's death (Count V); and a claim against APD for violating the Americans with Disabilities Act ("ADA"), which Plaintiffs contend "directly caused Mr. White's wrongful death," *Id.* ¶ 163 (Count VI). The Complaint seeks damages for loss of consortium by Mr. White's mother and stepfather, and punitive damages (Counts VII, IX, X).

On December 28, 2021, Defendants (the City, APD, Johnson, and Harrison) jointly filed an Answer to the Complaint. Doc. 8. Thereafter, on January 20, 2022, Defendants filed the instant Motion to Stay, indicating that Johnson is currently on military leave with the United States Army National Guard and, as a result, asking the Court to stay the instant action as to Johnson and all other Defendants under the Servicemembers Civil Relief Act ("SCRA"), 50 U.S.C. § 3901 et seq. Doc. 11. Plaintiffs responded in opposition on February 2, 2022, Doc. 19, and Defendants' reply followed on February 15, 2022. Doc. 20.

**STANDARD**

The SCRA provides for "the temporary suspension of judicial and administrative proceedings and transactions that may adversely affect the civil rights of servicemembers during their military service" in order to "enable such persons to devote their entire energy to the defense needs of the Nation." 50 U.S.C. § 3902(1), (2). The SCRA "is always to be liberally construed to protect those who have been obliged to drop their own affairs to take up the burdens of the nation." *Boone v. Lightner*, 319 U.S. 561, 565 (1943).

Relevant here, the SCRA states that, upon application by a servicemember who "is in military service," the Court *shall* stay, for a period of not less than 90 days, "any civil action or

proceeding" in which the servicemember is a defendant, so long as two conditions are met. 50 U.S.C. § 3932 (a), (b)(1); *see also Turner v. A. Passmore & Sons Inc.*, 341 F. App'x 363, 370 (10th Cir. 2009) (noting that this provision requires that the court "must at the servicemember's request, stay any proceeding in which a servicemember is a party, under certain conditions"). In order to obtain a stay under this provision, the applicant must provide "[a] letter or other communication setting forth facts stating the manner in which current military duty requirements materially affect the servicemember's ability to appear and stating a date when the servicemember will be available to appear," and "[a] letter or other communication from the servicemember's commanding officer stating that the servicemember's current military duty prevents appearance and that military leave is not authorized for the servicemember at the time of the letter." 50 U.S.C. § 3932(b)(2). "Presumably, the two requirements can be met with a single 'letter or other communication,' so long as it states all of the facts that § [3932] (b)(a)(A) and (B) requires." *Pandolfo v. Labach*, 727 F. Supp. 2d 1172, 1175 (D.N.M. 2010).

Where the servicemember is a defendant, and his or her codefendants are not in military service and thus not entitled to the relief and protections provided under the SCRA, "the plaintiff may proceed against those other defendants with the approval of the court." 50 U.S.C. § 3935(b). Accordingly, the Court "has discretion to limit a stay under the [SCRA] to only the defendant on active duty and not to any codefendants." *Johnson v. City of Philadelphia*, No. 07-cv-2966, 2007 WL 3342413, at *3 (E.D. Pa. Nov. 6, 2007). In exercising this discretion, courts generally consider "whether allowing the case to proceed will prejudice either the absent servicemember or the remaining defendants." *Id.*; *see also Hale v. Chaves Cty. Board of Comm'rs*, No. 14-cv-313, 2014 WL 12792260, at *1 (D.N.M. June 5, 2014) (noting that, in deciding whether to limit a stay under the SCRA to only the servicemember defendant, relevant

factors include, "but are not limited to, prejudice to the servicemember, prejudice to the plaintiff, and judicial economy").

## DISCUSSION

In the instant case, Defendants argue that Johnson meets the conditions of Section 3932 requiring the Court to stay the action as against him because of his military service. Defendants further argue that, because allowing the case to proceed without him would prejudice him and the other Defendants and would waste judicial resources, the Court should exercise its discretion to stay the action against all Defendants. As set forth herein, the Court agrees both that it must stay this action as against Johnson and that, in the interest of fairness and judicial economy, it should stay this action as against his codefendants as well.

As an initial matter, the letter submitted with Defendants' Motion to Stay, written by United States Army Deputy Commandant John W. Dzieciolowski, meets the two requirements for a Section 3932 stay. Doc. 11-1. The letter explains that Officer Johnson is on "Active Duty military orders," pursuant to which he reported to Fort Rucker in Alabama on July 20, 2021, where he is enrolled in a series of aviation courses from which he is anticipated to graduate on November 13, 2022. *Id.* The aviation courses "run sequentially with little to no down time." *Id.* The letter indicates that the program "does not allow extraction and reinsertion of Soldiers during this training," and that, as a result, Deputy Commandant Dzieciolowski would not "approve pulling [Johnson] from training." *Id.*

The letter thus sufficiently states "the manner in which current military duty requirements materially affect [Johnson's] ability to appear," 50 U.S.C. § 3932(b)(2)(A), namely, that Johnson has no break in the series of aviation courses that he is attending in Alabama until November 13, 2022 pursuant to "Active Duty military orders," with "little to no downtime" to devote to his

defense of the instant action. Further, the letter sufficiently states that Johnson's "current military duty prevents appearance and that military leave is not authorized for [Johnson]," 50 U.S.C. § 3932(b)(2)(B), as Deputy Commandant Dzieciolowski represents that, due to the "program design," soldiers cannot be extracted and reinserted into the training program, and as a result, he would not authorize Johnson's leave from training for purposes of this action. Accordingly, the two requirements for a Section 3932 stay are met, and this Court *must* stay the instant proceeding. 50 U.S.C. § 3932(a), (b)(1).

Next, because of the nature of the claims in this case, the Court will not allow Plaintiffs to proceed against Johnson's codefendants. Every count asserted in the Complaint arises out of the single encounter during which Johnson and Harrison allegedly engaged in increasingly aggressive actions that ultimately (and tragically) caused Mr. White's death. The Complaint does not distinguish between the actions taken by Johnson and those taken by Harrison; they are part and parcel of the same encounter. And while Johnson is not named as a Defendant in three of the counts asserted in the Complaint, his (and Harrison's) encounter with Mr. White nonetheless forms the basis for those counts. Specifically, Count I sets forth a municipal liability claim against the City for its policies and customs, failure to supervise, and failure to train, which Plaintiffs claim resulted in Mr. White's death; Count V sets forth a state law claim against the City and APD for negligent training, supervision and retention, which Plaintiffs similarly argue resulted in Mr. White's death; and Count VI sets forth a claim against APD for violating the ADA, which Plaintiffs also contend "directly caused Mr. White's wrongful death." Doc. 1. Accordingly, the claims against Johnson "are intertwined with those of the other defendants." *Johnson*, 2007 WL 3342413, at *3.

Given the interrelationship among all claims and thus the defense of all Defendants, it is

6

difficult to see how allowing this case to proceed against Johnson's codefendants would not prejudice his defense and theirs.   For the same reasons, allowing Plaintiffs "to proceed against the non-servicemember Defendants will simply lead to duplicate hearings on discovery and scheduling matters."   *Hale*, 2014 WL 12792260, at *1.   Thus, "judicial economy is served by keeping all parties at the same place in the litigation."   *Id.*

The Court is sympathetic to Plaintiffs' concerns that a stay may result in the fading of memories of individuals from whom they plan to seek discovery.   The Court, however, is directed to "liberally construe" the SCRA to protect servicemembers.   *Boone*, 319 U.S. at 565.   So construed, the Court finds that the balance of the relevant factors weighs in favor of staying this action in its entirety.

## CONCLUSION

For the foregoing reasons, the Court finds that Defendants have sufficiently demonstrated that a stay of this action under the SCRA is warranted as to all Defendants.

**IT IS THEREFORE ORDERED** that Defendants' Opposed Motion to Stay, and Memorandum in Support [Doc. 11] is **GRANTED** as follows:   this action shall be stayed until November 13, 2022 or Johnson's release from his current military duty, whichever is first to occur.

DATED this 3rd day of March 2022.

_____
MARTHA VAZQUEZ
Senior United States District Judge